IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
5:03-CR-195-FL-1

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | |
| | ) | MEMORANDUM IN SUPPORT OF DEFENDANT'S PRO SE MOTION FOR COMPASSIONATE RELEASE |
| | ) | |
| AL JAMES SMITH, | ) | |
| | ) | |
| Defendant. | ) | |

Mr. Al James Smith, via undersigned counsel, respectfully moves this Honorable Court to grant his Motion for Compassionate Release under 18 U.S.C. § 3582(c)(1)(A) based on the "extraordinary and compelling reasons" presented by his immediate vulnerability to COVID-19 while detained with multiple extremely high-risk, chronic medical conditions. As verified herein and also attached to said Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), Mr. Smith has properly exhausted his administrative remedies by filing his release request with the Warden on August 10, 2020. *See Docket Entry [DE] 122*: *Pro Se Motion Compassionate Release filed August 10, 2020.* As of this filing, Mr. Smith has yet to receive a response regarding his emergency motion.

Mr. Smith is sixty-one (61) years old and chronically suffers from Diabetes Type II; High Blood Pressure; Severe Asthma; High Cholesterol; Degenerative Disc Disease; Nerve Disorder in his hip; Ulcers; Gout; and Arthritis in his spine. *See Exhibit B: BOP Medication List*, detailing severe medical conditions. Mr. Smith requires a cane to walk. He takes several prescription medications every day, including an Albuterol Inhaler; Amlodipine; Allopurinol; Aspirin;

Atorvastatin; Carbamazepine; Losartan; Metoprolol Tartrate; Mometasone Furoate Inhaler; Omeprazole; and Tamsulosin. *See Exhibit B*.

Mr. Smith talked with his Camp Administrator recently who informed him that he is considered high risk for life-threatening complications should he contract COVID-19. Mr. Smith's doctor has also informed his case manager that Mr. Smith's case is particularly high risk. However, the warden of Mr. Smith's facility has said he is systematically denying requests for compassionate release, even if they are due to life-threatening COVID-19 reasons as in Mr. Smith's case.

Upon information from Mr. Smith, he has now, as of the time of this filing, tested positive for COVID-19 due to the failure of the facility to separate inmates who had previously tested positive from other inmates. Mr. Smith is now in quarantine and every day is a potentially life-threatening situation for him.

Mr. Smith is in custody at FCI Petersburg Low, a low security institution with an adjacent minimum-security satellite camp. At the last contact with Mr. Smith, he was detained in the camp. Upon information from Mr. Smith, inmates were being tested for coronavirus on Mondays and Fridays, and inmates were being taken out of the camp as they tested positive. One hundred and seventy (170) inmates began in the camp. Now, over one hundred (100) inmates have been removed from the camp. Further exacerbating the problem, inmates who had tested positive for COVID-19 were not immediately removed from the general population but were removed hours or days later due to the prisons running out of room to place sick inmates. According to Mr. Smith, on Monday, fourteen (14) more inmates were removed from the camp due to positive COVID-19 results. The inmates who have tested positive were relocated to a recreational center which was previously shut down for use due to a mold infestation.

Staff members and inmates have already been infected with COVID-19 at increasingly high rates at FCI Petersburg. (*See* https://www.bop.gov/coronavirus/ wherein the public is provided a "snap shot" of one time, which clearly is subject to deteriorating conditions and an increasing hazard of airborne disease from moment to moment.) Most judges from the Eastern District of North Carolina, have granted such Compassionate Release Requests where it is appropriate to show this type of legally-sanctioned mercy, it is respectfully requested that this Honorable Court also issue an order reducing Mr. Smith's sentence to time served and/or home confinement given that it is appropriate to do so in Mr. Smith's immediate case as well. For example, *see United States v. Roberto Pablo Gutierrez*, Crim. No. 5:11-CR-149-1-BR, ECF No. 156 (E.D.N.C. April 30, 2020).

## STATEMENT OF FACTS

On November 25, 2003, an eight-count second superseding indictment was returned charging Defendant with three counts of making false statements in acquiring firearms, three counts of possessing a firearm after being a felon in possession, and two counts relating to engaging in the business of dealing in firearms without a license. PSR at ¶ 1. On December 10, 2003, a jury returned a verdict finding Defendant guilty on all counts [D.E. 35]. Defendant's statutory penalty for each of his felon in possession convictions was increased from 0-10 years' imprisonment to 15 years to life imprisonment. 18 U.S.C. § 924(e)(1). On March 15, 2004, the court sentenced Defendant to 293 months' imprisonment and five years' supervised release [D.E. 120 at 1]. Mr. Smith's projected release date is April 30, 2024.

On July 6, 2020, Mr. Smith filed a pro se motion seeking to correct paragraph 40 of his PSR which erroneously labels the crime of conviction in North Carolina Criminal Case No. 00-

CRS-051692 [D.E. 119]. Defendant asserts that such correction is necessary because it may impact the Federal Bureau of Prisons' ("BOP") determination as to whether he qualifies for early release, either to a residential facility or home confinement. The Government filed a response, indicating that it does not oppose the issuance of an order, pursuant to Fed. R. Crim. P. 36, correcting the labelling error contained in paragraph 40 of his PSR.

The current COVID-19 outbreak has not been contained in the United States and certainly and sadly not within our prison walls either. On August 10, 2020 Mr. Smith filed his Pro Se Motion for Compassionate Release. *See Exhibit DE 122*. Thus, it is respectfully submitted that this Honorable Court find that he has satisfactorily pursued his administrative remedies given that all matters have been completed, as required by 18 U.S.C. § 3582(c)(1)(A) *See Exhibit A: Exhaustion of Administrative Remedies.* Accordingly, it is respectfully submitted that it is appropriate under these urgent circumstances for this Honorable Court not to strictly construe the administrative exhaustion requirement in the case sub judice and as such, find that he has in fact exhausted his administrative remedies. *See Haines v. Kerner*, 404 U.S 519, 520 (1972).

## BACKGROUND

Congress first enacted 18 U.S.C. § 3582(c)(1) as part of the Comprehensive Crime Control Act of 1984 to serve as a "safety valve" for judges to assess whether a sentence reduction was warranted by factors that previously would have been addressed through the abolished parole system. S. Rep. No. 98-225, at 121 (1983). "This legislative history demonstrates that Congress, in passing the Comprehensive Crime Control Act of 1984, intended to give district courts an equitable power to employ on an individualized basis to correct sentences when 'extraordinary and compelling reasons' indicate that the sentence initially imposed on an individual no longer served

legislative objectives." *United States v. Millan*, No. 91-CR-685 (LAP), 2020 WL 1674058, at * 5 (S.D.N.Y. Apr. 6, 2020).

The compassionate release statute empowered courts to reduce a defendant's sentence whenever "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). Congress delegated to the U.S. Sentencing Commission the responsibility of defining what were "extraordinary and compelling reasons." *See* 28 U.S.C. § 994(t) ("The Commission . . . shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples."). It was not until 2007, more than two decades after the statute was enacted, that the Commission responded. It issued a guideline stating that "extraordinary and compelling reasons" include medical conditions, age, family circumstances, and "other reasons." U.S.S.G. § 1B1.13, app. n.1(A)-(D).

Mr. Smith is unfortunately extremely vulnerable to hospitalization and even death now that he has contracted COVID-19 due to his multiple high-risk conditions. *See* Current CDC Determinations of High Risk Conditions: https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html. Mr. Smith's request for compassionate release qualifies under the guidelines as extraordinary and compelling reasons. Application Note 1(A)(ii) to Guidelines Section 1B1.13 states extraordinary and compelling reasons, which include when

The defendant is—

(I)     suffering from a serious physical or medical condition;
(II)    suffering from a serious functional or cognitive impairment; or
(III)   experiencing deteriorating physical or mental health because of the aging
        process, that substantially diminishes the ability of the defendant to provide self-
        care within the environment of a correctional facility and from which he or she is
        not expected to recover.

U.S.S.G. § 1B1.13 app. n. 1(A)(ii). Application Note 1(B) identifies extraordinary and compelling reasons to include Mr. Smith's "suffering from a serious physical or medical condition." Furthermore, Application Note 1(D) created a catch-all provision, for when the Director of the BOP determined "there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)."

As originally enacted, the statute left sole discretion for filing compassionate release motions with the Director of the BOP, who adopted a program statement governing compassionate release that in many ways narrowed the criteria established by the Commission. *See* BOP Program Statement 5050.49. During the span of more than three decades, the BOP rarely filed motions on behalf of inmates who met the eligibility criteria. The Office of the Inspector General for the Department of Justice concluded in 2013 that "[t]he BOP does not properly manage the compassionate release program, resulting in inmates who may be eligible candidates for release not being considered." Department of Justice, Office of the Inspector General, *The Federal Bureau of Prisons' Compassionate Release Program* (April 2013), at 11, available at https://oig.justice.gov/reports/2013/e1306.pdf; *see also* Department of Justice, Office of the Inspector General, *The Impact of an Aging Inmate Population on the Federal Bureau of Prisons* (May 2015), at 51, available at https://oig.justice.gov/ reports/2015/e1505.pdf ("Although the BOP has revised its compassionate release policy to expand consideration for early release to aging inmates, which could help mitigate the effects of a growing aging inmate population…", decades of denying such Compassionate Release Reduction Requests are imprinted in its long standing history); U.S.S.G. § 1B1.13, app. n.4 (admonishing BOP for its past failure to pursue relief on behalf of eligible inmates). Heeding this criticism, Congress acted.

The title of Section 603(b) of the First Step Act—"Increasing the Use and Transparency of Compassionate Release"—leaves no doubt as to Congress' intent in modifying 18 U.S.C. § 3582(c)(1)(A). Through the First Step Act, enacted December 21, 2018, Congress sought to resuscitate compassionate release by, *inter alia*, allowing defendants to directly petition courts for relief, rather than leaving that power solely in the hands of the BOP. *See* 18 U.S.C. § 3582(c)(1)(A). "[U]nder the amended statute, a court may conduct such a review also 'upon motion of the defendant,' if the defendant has exhausted all administrative remedies to appeal the BOP's failure to bring a motion, or if 30 days has lapsed 'from the receipt of such a request by the warden of the defendant's facility,' whichever is earlier." *United States v. Decator*, No. CCB-95-0202, 2020 WL 1676219 (D. Md. Apr. 6, 2020) (*quoting* 18 U.S.C. § 3582(c)(1)(A)(i); Pub. L. 115-391, Title VI, § 603(b), Dec. 21, 2018, 132 Stat. 5239), *appealed by the government*. In other words, "a prisoner must exhaust the administrative appeal process, or wait 30 days, before his claim may be considered" by the court. *United States v. Underwood*, No. TDC-18-0201, 2020 WL 1820092, at *2 (D. Md. Apr. 10, 2020) (citing cases).


## ARGUMENT

Medical professionals within our country and around the world for that matter have deemed Mr. Smith's vulnerability to COVID-19 as being placed in the high-risk category of likely not being able to survive the Coronavirus due to his history of chronic medical problems. https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html. This constitutes "extraordinary and compelling reasons" for relief. Mr. Smith's underlying medical conditions make him especially vulnerable to COVID-19, constituting "extraordinary and compelling reasons" for relief. His release does not pose a danger to the

community, and a balancing of the § 3553(a) factors with the risks to Mr. Smith posed by COVID-19 warrants relief.

### A. This Honorable Court has the authority to determine that Mr. Smith's vulnerability to COVID-19 does in fact constitute an "Extraordinary and Compelling Reason" for a sentence reduction.

Many federal judges across the country are holding that they have the authority to define "extraordinary and compelling reasons" for release under § 1B1.13 app. n. 1(D) and that the risks associated with COVID-19 can constitute an "extraordinary and compelling reason" for a sentence reduction. Courts have used their wise and appropriate discretion to provide defendants with relief under § 3582(c)(1)(A) "even when their circumstances do not fit squarely within the current policy statement of the Sentencing Commission as reflected in U.S.S.G. §1B1.13." *United States v. Alexander Salabrarria*, Crim. No. 7:00-CR-95-1-BO, ECF No. 125, page 5 (E.D.N.C. April 14, 2020), citing *United States v. Mauma*, No. 2:08-CR-00758-TC-11, 2020 WL 806121, at *4 (D. Utah Feb. 18, 2020) (listing cases holding same).

In *United States v. Mel*, Judge Chuang held that "[a]s applied to Mel, the COVID-19 pandemic presents 'extraordinary and compelling reasons' that warrant the modest sentencing reduction requested." 2020 WL 2041674, at *2. Ms. Mel had submitted documents establishing that she had a thyroid mass that doctors estimated had a 25- to 40-percent chance of malignancy. While Judge Chuang found he could not "conclude with certainty" that Mel had a health condition that placed her at particular risk to severe illness from COVID-19, he "nevertheless . . . f[ound] that the historic COVID-19 pandemic, the fact that Mel has been incarcerated in one of the federal prisons most profoundly impacted by COVID-19 [FCI Danbury], and the fact that as a result of the outbreak, she has effectively been prevented from receiving necessary medical care for a

potentially life threatening condition, collectively establish 'extraordinary and compelling reasons' within the meaning of 18 U.S.C. § 3852(c)(1)(A)." *Id.* at 3.

Judges in districts throughout the United States have recognized that, at least for certain defendants, COVID-19 presents "extraordinary and compelling reasons" warranting a reduction in their sentences under the compassionate release statute. They vary from individual to individual, which is to be expected, but a common thread attaches them all; that is, the need to otherwise have a fighting chance at surviving alongside the necessary love of your family, as opposed to physically suffering and unnecessarily deteriorating once the coronavirus is contracted by an inmate because of his or her unfortunate medical diseases and concerns or simply due to the fact that COVID-19 is running rampant across our federal prison system leading to unnecessary suffering and death amongst the inmates therein. Some of these cases are cited below to identify the range of which Federal Courts across the country are granting such Compassionate Release Requests. These cases include, but are not limited to:

- *United States v. White*, No. 2:17-CR-00198-4, 2020 WL 3244122, at *6 (S.D.W. Va. June 12, 2020) (Compassionate release granted to a defendant who was immunocompromised— suffering from a liver disease, Hepatitis C). *See also Coronavirus Disease 2019 (COVID-19): People with Certain Medical Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited July 23, 2020) (listing "immunocompromised state" as an underlying medical condition causing an "increased risk for severe illness from COVID-19");

- *United States v. Copeland*, No. 1:03-cr-01120-FB-1, 2020 WL 2537250 (E.D. N.Y. May 19, 2020) (Motion for compassionate release granted where defendant "has long battled chronic Hepatitis C…") (emphasis added);

- *United States v. Howard*, No. 4:15-cr-00018-BR, 2020 WL 2200855 (E.D.N.C. May 6, 2020) (finding 52-year-old with "chronic obstructive pulmonary disease ('COPD'), Type II diabetes, obesity, Stage 3 kidney disease, edema, open wounds on his legs, and a diaphragmatic hernia" demonstrated extraordinary and compelling circumstances due to COVID-19 even though his conditions neither constituted terminal illness nor prevented him from engaging in most of his daily activities without assistance);

- *United States v. Norris*, No. 7:19-cr-36-BO-2, 2020 WL 2110640 (E.D.N.C. Apr. 30, 2020) (finding defendant had demonstrated extraordinary and compelling circumstances for relief because he "suffers from various severe ailments," including a life-threatening disease, kidney failure requiring dialysis three times a week, and recurrent bouts of pneumonia, "that cumulatively make his continued confinement especially dangerous in light of COVID-19.")

- *United States v. Hansen*, No. 17-cr-50062, 2020 WL 2219068 (N.D. Ill. May 7, 2020) ("[T]he Court cannot discount the risk to Hansen if he contracts coronavirus, as reliable information places him in a higher-risk category. Specifically, the presentence report documents that he suffers from diabetes, hypertension, high cholesterol, kidney disease, and chronic obstructive pulmonary disease, all of which are confirmed risk factors for serious illness if one contracts coronavirus.")

- *United States v. Amarrah*, No. 17-20464, 2020 WL 2220008 (E.D. Mich. May 7, 2020) (shortening 60-month sentence after only 21 months because Amarrah's "Type II diabetes, hypertensive heart disease, cardiac arrhythmia, obstructive sleep apnea, and asthma" put him a substantial risk should he contract COVID-19 even though facility had no reported cases);

- *Casey v. United States*, No. 4:18-cr-4, 2020 WL 2297184, at *3 (E.D. Va. May 6, 2020)("The Court finds that Petitioner has set forth extraordinary and compelling reasons to modify his sentence because of the great risk that COVID-19 poses to a person of his age with underlying health conditions.");

- *United States v. Quintero*, No. 08-cr-6007L, 2020 WL 2175171 (W.D.N.Y. May 6, 2020) (granting compassionate release to man who "suffers from diabetes, a compromised immune system, obesity, and hypertension," "which make him more susceptible than another to contract the virus.");

- *United States v. Reid*, No. 17-cr-00175-CRB-2, 2020 WL 2128855 (N.D. Cal. May 5, 2020) (granting compassionate release based on risks COVID-19 presents to individual with hypertension, high cholesterol, and Valley Fever, which causes lung infection and can result in acute pneumonia);

- *United States v. Pabon*, No. 17-165-1, 2020 WL 2112265, at *1 (D Mass. May 4, 2020) (holding that for the 54-year-old defendant who suffers from "diabetes, hypertension, hemophilia, atopic dermatitis, gastroesophageal reflux disease, peptic ulcer, and diverticulitis" "nothing could be more extraordinary and compelling than this pandemic");

- *United States v. Echevarria*, No. 3:17-cr-44 (MPS), 2020 WL 2113604 (D Conn. May 4, 2020) (finding 49-year-old with pre-existing respiratory condition—a history of bronchial asthma—combined with the increased risk of COVID-19 in prisons had demonstrated extraordinary and compelling reasons for relief);

- *United States v. Kelly*, No. 3:13-CR-59-CWR-LRA-2, 2020 WL 2104241, at *7 (S.D. Miss. May 1, 2020) (granting compassionate release to young man without health issues at Oakdale I because "it has become increasingly apparent that the BOP has failed to control the outbreak at Oakdale I. … Given the steadily growing death toll and the apparent continued spread of the disease at Oakdale I, COVID-19 creates an 'extraordinary and compelling reason' potentially warranting a reduced sentence.");

- *United States v. Rodriguez*, No. 2:03-cr-00271-AB-1, 2020 WL 1627331, at *7 (E.D. Pa. Apr. 10, 2020) ("Mr. Rodriguez's circumstances—particularly the outbreak of COVID-19 and his underlying medical conditions that place him at a high risk should he contract the disease—present 'extraordinary and compelling reasons' to reduce his sentence."); and

- *United States v. Miller*, No. 16-cr-20222-1, 2020 WL 1814084, at *4 (E.D. Mich. Apr. 9, 2020) ("Miller squarely fits the definition of an individual who has a higher risk of falling severely ill from COVID-19. . . . Therefore, the Court finds that extraordinary and compelling reasons exist for his immediate compassionate release.").

There is no question that Section 603(b) of the First Step Act fundamentally changed the role of courts in the compassionate release process, vesting them with the authority to determine what constitutes extraordinary and compelling reasons for release. This pandemic, as applied to Mr. Smith with his current chronic illness and lack of recommended treatment, is an extraordinary and compelling circumstance.

### B. Mr. Smith's Dire Situation Presents an "Extraordinary and Compelling" Reason Warranting a Reduction in Sentence.

The Centers for Disease Control have identified several factors that put individuals at higher risk for severe illness. "People of any age with **certain underlying medical conditions** are at increased risk for severe illness from COVID-19." CDC, *What to know about liver disease and COVID.* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/liver-disease.html. Those underlying conditions include Diabetes Type II; High Blood Pressure; Severe Asthma; High Cholesterol; Degenerative Disc Disease; Nerve Disorder in his hip; Ulcers; Gout; and Arthritis in his spine.

While the Bureau of Prisons has made efforts to reduce the spread of the virus throughout the federal prison system, the rate of infection is far higher within the Bureau of Prisons than within the community at large, and continues to spread at an alarming rate, as the below graph demonstrates.



Amid this rapidly-unfolding crisis, the universally-recommended antidote is simple: reduce the prison population by releasing those whose continued incarceration is not necessary to protect the public so that correctional institutions can better protect those who need to stay incarcerated.[1] Mr. Smith is exactly the type of individual deserving of compassionate release: he is at risk of

---

[1]    For example, on March 27, 2020, more than 400 former DOJ leaders, attorneys, and federal judges sent an open letter to the President, asking that he take immediate action to reduce the population in correctional facilities to prevent the catastrophic spread of COVID-19, in particular by commuting the sentences of elderly and medically vulnerable inmates who have already served a majority of their sentence. *See https://fairandjustprosecution.org/wp-content/uploads/2020/03/Letter-to-Trump-from-DOJ-and-Judges-FINAL.pdf.*  The same day, dozens of public health experts made a similar request, asking the President to commute the sentences of elderly inmates, noting they are at the highest risk of dying from the disease and pose the smallest risks to public safety. *See https://thejusticecollaborative.com/wp-content/uploads/2020/03/Public-Health-Expert-Letter-to-Trump.pdf.*

severe illness and, as will be discussed in the next section, his release does not pose a danger to the community and balancing the 3553(a) factors warrants the requested relief.

### C. The Relevant § 3553(a) Sentencing Factors Warrant Reducing Mr. Smith's Sentence to Time Served / Adding a Period of Home Confinement as a Condition of Supervised Release.

Under the compassionate release statute, when a defendant establishes the existence of extraordinary and compelling circumstances justifying relief, courts must consider the relevant sentencing factors of 18 U.S.C. § 3553(a) to determine whether a sentencing reduction or modification is warranted. 18 U.S.C. § 3582(c)(1)(A)(i). Here, Mr. Smith's compromised physical health, and the unique danger now that he has contracted COVID-19, when combined with the other Section 3553(a) sentencing factors, warrant immediate relief.

Mr. Smith has earned almost thirty (30) program certificates while detained, he has not had any infractions since he has been detained and would not be a danger whatsoever once released. *See Exhibit* **C**: *Program Certifications of Mr. Smith demonstrating rehabilitation.* He does not have a have a history of violent behavior, his crimes have not involved minors, and now he is sixty-one years old and walks with the help of a cane due to his degenerative disk disease and severe arthritis. *See Exhibit B.* Release at this time would promote respect for the law because Mr. Smith has substantially served his sentence. On March 15, 2004, the court sentenced Mr. Smith to 293 months' imprisonment and five years' supervised release [D.E. 120 at 1]. Mr. Smith's projected release date is April 30, 2024. Alternatively, continuing a culture of mass incarceration and blind enforcement without regard to humanity or case-by-case analysis would not promote respect for the law.

A reduction or modification of Mr. Smith's sentence would not diminish the seriousness of the offense, nor would it place the public in any danger. The extraordinary and compelling circumstances presented by the uncontrolled spread of COVID-19—compounded by the heightened risks faced by Mr. Smith, whose ability to engage in basic self-protective measures is restricted and thus, warrant relief.

Moreover, Mr. Smith has an immediate release plan. He will reside with his sister, Callie Smith, at 1428 Old Lowery Road, Red Springs, NC 28377. *See Exhibit D, Statements from Mr. Smith's family confirming his release plan, rehabilitation, good moral character, and high-risk medical conditions*. The home has three bedrooms, and Callie Smith and Mr. Smith would be the only residents of the home. Ms. Smith owns the home and she is a substitute teacher. Mr. Smith has employment already once he is released with J&J Trucking. James Flowers has agreed to employ Mr. Smith at J&J Trucking on Hwy 211 in Red Springs, North Carolina. Mr. Flowers has said that Callie Smith's home is close to the trucking company and that he will be giving Mr. Smith a ride to work. Ms. Smith's residence information and the employment information at J&J Trucking have already been submitted with Mr. Smith's release plan, and Ms. Smith's home has already been visited and reviewed for approval. Of Mr. Smith's nine children, seven are still living and they are adults now. They are eager to continue building their relationship with Mr. Smith when he is released. Mr. Smith's siblings have a car and cell phone ready for Mr. Smith as well once he can be released. He will be applying for disability due to his numerous and severe medical conditions, but in the meantime, he is planning to access medical care through social services. Furthermore, Mr. Smith's older brother has recently suffered from seizures and had to be hospitalized at Duke Hospital. Mr. Smith is eager to be able to visit his brother in case it is time to say goodbye, as his family has assumed it may be time. *See Exhibit D*.

## CONCLUSION

Mr. Smith has demonstrated extraordinary and compelling reasons for compassionate release and respectfully requests this Honorable Court to reduce his sentence to time served and/or add a period of home confinement as a condition of supervised release.

Respectfully submitted, this the 14th day of September 2020.

GUIRGUIS LAW, PA

/s/ Nardine Mary Guirguis
Nardine Mary Guirguis
PANEL Attorney
434 Fayetteville St., Suite 2140
Raleigh, North Carolina 27601
Telephone: (919) 832-0500
Facsimile: (919) 246-9500
nardine@guirguislaw.com

*Designation: CJA Appointed*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was served upon the Assistant Attorney for the United States electronically at the following address:

>Ethan A. Ontjes
>Assistant United States Attorney
>Ethan.ontjes@usdoj.gov
>150 Fayetteville Street, Suite 2100
>Raleigh, North Carolina 27601

This 14th day of September 2020.

>GUIRGUIS LAW, PA

>/s/ Nardine Mary Guirguis
>Nardine Mary Guirguis
>PANEL Attorney